169 N.J. Super. 575 (1979)
405 A.2d 443
KEITH L. ARTHUR, PLAINTIFF,
v.
ST. PETERS HOSPITAL, LORIN PRESS, M.D., ALAN HIRSHMAN, M.D., JANE DOE, MARY ROE, ETC., UNKNOWN PHYSICIANS, RADIOLOGISTS, REGISTERED NURSES, LICENSED PRACTICAL NURSES, AND NURSES AIDES, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 30, 1979.
*577 Mr. Gerard C. Gross for plaintiff.
Mr. Joel A. Greenberg for defendants (Messrs. Horn, Kaplan, Goldberg & Gorny, attorneys).
GIBSON, J.S.C.
This is a medical malpractice case in which the defendant hospital has moved for summary judgment. Essentially, the hospital argues that whatever negligence existed was that of the physicians involved and since they were independent contractors, it is entitled to a dismissal as a matter of law. Plaintiff asserts that the doctors' contractual status is still a factual question and that, in any event, the hospital held the doctors out as its employees and it would therefore be responsible under the doctrine of apparent authority.[1]
The material facts are not in dispute and may be summarized as follows: Following an injury to his left wrist on February 6, 1976, plaintiff sought treatment at the emergency room of St. Peters Hospital in New Brunswick. After being examined he was sent to the radiology department where his *578 wrist was x-rayed. At that point he was advised that no fractures existed and was released. As a result of continuing pain and swelling over a period of months, however, plaintiff sought the services of another physician, whereupon it was discovered that he had sustained a fracture of the navicular bone. This suit ensued. Submitted with this motion is an affidavit by a representative of the hospital stating that the physicians involved were independent contractors. In support of that conclusion it is noted that no deductions for withholding or Social Security taxes were made from the payment they received. Although no responsive affidavit was submitted, copies of the reports from the emergency room and the radiology department were supplied along with a copy of the hospital bill. All contain the logo of the hospital and there is no indication which would identify the physicians as being part of any independent group, as the hospital had claimed.
Contrary to the position taken by the hospital, it is clear that while the absence of deductions may have some probative value on the issue of whether an employer-employee status existed, "neither the making nor the failure to make such deductions is dispositive of an issue of this type." Dee v. Excel Wood Products Co., 86 N.J. Super. 453, 457 (App. Div. 1965). In determining employment status in New Jersey, it is the "degree of control" which is critical. When applying that test several factors may be considered, including the type of occupation, the skill required, the method of payment, who supplies the tools, etc. Miklos v. Liberty Coach Co., 48 N.J. Super. 591, 602 (App. Div. 1958); see also, Pelliccioni v. Schuyler Packing Co., 140 N.J. Super. 190, 199 (App. Div. 1976); Dee v. Excel Wood Products Co., Inc., supra, and Restatement, Agency, § 220 (1933). Although it may be that the movant can develop proofs sufficient to favorably resolve this question, it nevertheless becomes moot for purposes of this opinion in *579 view of the determination being made here on the issue of apparent authority.[2]
By invoking the doctrine of apparent authority plaintiff suggests that regardless of the employment status of the physicians, the hospital should nevertheless be held responsible for their conduct, having held them out to the public as their employees. Although this concept is well recognized within the law of agency, research reveals no New Jersey cases where it has been applied to establish liability upon hospitals for the negligence of its independent physicians. Normally, a principal is responsible for the actions of an agent who is acting within the scope of his authority. Wright v. Globe Porcelain Co., 72 N.J. Super. 414, 418 (App. Div. 1962). However, where one engages the services of an independent contractor, that person is generally not liable for the latter's negligent acts. Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 430 (1959); Donch v. Delta Inspection Services, Inc., 165 N.J. Super. 567, 570 (Law Div. 1979).[3] The general rule of immunizing persons from vicarious liability for the negligent acts of independent contractors has been applied equally to hospitals. Judge Greenberg outlined this principle in Corleto v. Shore Memorial Hospital, 138 N.J. Super. 302 (Law Div. 1975):

*580 Liability of a private hospital for the negligent acts of the members of its professional staff must be predicated on the doctrine of respondeat superior. Accordingly, a private hospital is not responsible for any default on the part of a physician or surgeon who practices his profession as an independent agent, and, where a patient employs a physician or surgeon not in the employ of the hospital, the hospital is not liable for his negligence. [at 306; 41 C.J.S. Hospitals § 8 at 346].
Contrary to the defendant hospital's suggestion, however, Corleto cannot be read as having resolved the question now being considered. The issue raised there dealt with the liability of a hospital where it could be shown that it was negligent in failing to supervise and/or remove an incompetent doctor. The court never considered the doctrine of apparent authority, nor did it have to.
Since it has been assumed for purposes of this argument that the physicians here were independent contractors, the general rules outlined above make it clear that the hospital would normally not be responsible for their wrongdoing. How, then, does the doctrine of apparent authority affect that conclusion, if at all? Apparent authority, or what is sometimes referred to as the "holding out" theory, has its origins as part of the law of agency. It imposes liability, not as the result of the reality of a contractual relationship but rather because of the actions of a principal or an employer in somehow misleading the public into believing that the relationship or the authority exists. The concept is essentially one of estoppel and has been explained in this manner:
* * * [T]he principal is bound by the acts of his agent with the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. The question in every case * * *. is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question; * * *. [Hudson & C., Loan Ass'n., Inc. v. Horowytz, 116 N.J.L. 605, 608 (Sup. Ct. 1936)]
*581 Generally, the doctrine presupposes the existence of a principal-agent relationship, ibid, and of course, when dealing with an independent contractor, no such relationship exists. However, this relationship is not necessary to the application of the doctrine. Nor is the concept confined to the field of contracts. Hill v. Newman, 126 N.J. Super. 557 (App. Div. 1973), certif. den. 64 N.J. 508 (1974). In Hill the vendor of certain furniture was held liable for the negligent acts of an independent contractor which it had sent to the buyer's home to make repairs. Plaintiff, who was injured as a result of that negligence, was not aware of the repairman's independent contractor status. The court found that the evidence supported the view that the seller had held out the repairman as its own employee. In so ruling the court quoted with approval § 429 of the Restatement, Torts 2d (1964):
One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants. [at 562]
Given the holding in Hill and despite the general rule dealing with independent contractors, there does not appear to be any rational basis for excluding the concept of apparent authority from the field of hospital liability. In those cases where it can be shown that a hospital, by its actions, has held out a particular physician as its agent and/or employee and that a patient has accepted treatment from that physician in the reasonable belief that it is being rendered in behalf of the hospital, then the hospital will be liable for the physician's negligence.[4] Although this position appears to be one of first *582 impression in this State, it is a view that has been followed elsewhere. Mduba v. Benedictine Hospital, 52 A.D.2d 450, 384 N.Y.S.2d 527, 529 (App. Div. 1976), Brown v. Moore, 247 F.2d 711, 719 (3 Cir.1957); Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121, 1124 (Ct. App. 1977); Stanhope v. Los Angeles College of Chiropractic, 54 Cal. App.2d 141, 128 P.2d 705, 708 (Cal. D. Ct. App. 1942). Cf. Vanaman v. Milford Memorial Hosp., Inc., 262 A.2d 263 (Del. Super. 1970), where the court acknowledges the "holding out" theory but concludes that the facts there did not support such a conclusion.
In Mduba v. Benedictine Hospital, supra, for example, the New York Appellate Division held a hospital to be vicariously liable for the negligence of an emergency room doctor in failing to administer a blood transfusion. Although the court ruled that the physician was an employee, it did not rest its decision on that ground but rather held the hospital responsible on the theory that it had held out the physician as its agent. As in Hill v. Newman, supra, the court relied on § 429 of Restatement, Torts 2d. It also made this observation:
Patients entering the hospital through the Emergency Room, could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital. Such patients are not bound by secret limitations as are contained in a private contract between the hospital and the doctor. * * * [384 N.Y.S.2d at 529; citations omitted]
Similarly, in Brown v. Moore, supra, the United States Court of Appeals (applying Pennsylvania law) held it to be a jury question as to whether a sanitarium had "held out" a neuropsychiatrist as its employee so as to render it liable for his negligence. In so holding the court concluded that although the doctor may be considered an independent contractor in his relations with the principals of the sanitarium, *583 he could nevertheless be classified as an "employee" in his relations with a patient.[5] 247 F.2d at 720.
The logic of these cases is persuasive, particularly when examined in terms of what may be viewed as the reasonable expectations[6] of the public. This court may take judicial notice[7] that generally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician[8] or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom it might be expected to come into contact, it would be natural for him to assume that these people are employees of the hospital. In applying these concepts to the factual setting of this case, there is at least a permissible inference that the hospital held out these physicians as its employees. It is significant that the only evidence produced on the issue of "notice" (the reports and the bill) support plaintiff's conclusion that the physicians involved did not possess any independent status. At the very least, a factual question is presented.
*584 In summary, based on the proofs submitted, this court cannot conclude as a matter of law that defendant hospital has established the independent contractor status of the physicians involved. Regardless of what conclusion may be reached on that issue, however, it is the opinion of this court that there are facts here which permit the inference that the hospital held these physicians out as its employees. Absent notice to the contrary, therefore, plaintiff had the right to assume that the treatment received was being rendered through hospital employees and that any negligence associated with that treatment would render the hospital responsible. Defendant's motion for summary judgment is accordingly denied.
NOTES
[1] The written opinion represents an expansion of an oral opinion rendered at the time of argument.
[2] At the time of oral argument and subsequent thereto defendant hospital was given the opportunity to submit additional facts on this issue but declined to do so.
[3] Although there is an exception to this general rule in cases where the work delegated is "inherently dangerous," Donch v. Delta Inspection Services, supra, and although the taking of x-rays involves some degree of danger, it would appear that such work is not dangerous in and of itself if performed properly, and thus it is doubtful whether this activity would fall within the exception. Cf. Araujo v. N.J. Natural Gas Co., 62 N.J. Super. 88 (App. Div. 1960), certif. den. 33 N.J. 328 (1960).

Here, however, the exception is clearly inapplicable since the negligence complained of has nothing to do with the danger of x-rays.
[4] This conclusion relates to liability of a hospital to its patient. As to the rights of the hospital vis a vis the physician, both contractual and common law indemnity would presumably still apply.
[5] Although the court expressed serious doubts as to whether a physician who was also the sanitarium's medical director would be considered an independent contractor, it chose to rest its decision on the "holding out" theory. Id. at 719. See 719-721 with respect to the various items of evidence considered to be determinative on this issue.
[6] The "reasonable expectations" concept is one that is frequently utilized in the field of insurance law to hold carriers liable for coverage despite the absence of contractual responsibility. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 488 (1961).
[7] See Evid. R. 9(2) (d).
[8] Vanaman v. Milford Memorial Hospital, Inc., supra at 265.