**Maria DYMBURT, et al., Plaintiffs,**

v.

**Vatsala RAO, M.D., et al., Defendants.**

**Civ. No. 93–2587(WHW).**

United States District Court, D. New Jersey.

March 30, 1995.

Bernard F. Conway, Morristown, NJ.

Peter Korn, McDonough, Korn and Eichorn, Springfield, NJ.

Louis Ruprecht, Ruprecht & Hart, Millburn, NJ.

## OPINION

PISANO, United States Magistrate Judge:

### Introduction

This matter comes before the Court upon the motion of defendant Magdalina Tan, M.D. ("Dr. Tan") for partial summary judgment. Opposition was filed by plaintiffs Maria Dymburt ("Mrs. Dymburt"). Defendant Vatsala Rao, M.D. ("Dr. Rao") does not oppose the motion.[1] Oral argument was heard on March 27, 1995. For the reasons set forth herein, defendants' motion is granted.

### Background

Mrs. Dymburt retained Dr. Tan to be her obstetrician gynecologist ("Ob/Gyn") for the birth of her third child in September, 1991.

---

1. The parties have consented to the jurisdiction of this Court for all purposes. 28 U.S.C. § 636(c).

Dr. Tan is a solo practitioner. Thus, Mrs. Dymburt saw Dr. Tan for office visits throughout the months of her pregnancy. Dr. Tan charges a single fee for all of her services through delivery.

Mrs. Dymburt was due to deliver her child on May 9, 1992. She had an office visit with Dr. Tan on May 8, 1992, and in fact, went into labor the next day.

Being a solo practitioner, Dr. Tan participates in a coverage arrangement with two other doctors, Dr. Rao and Dr. Kim. The three doctors alternate weekends so that each doctor works every third weekend. The covering doctor does not receive remuneration for the work performed upon patients of another doctor.

On May 9, 1992, Dr. Rao was on call, covering for both Dr. Tan and Dr. Kim. Thus, when Mrs. Dymburt checked into St. Peter's Hospital, Dr. Rao attended to her and handled the delivery of her child. Dr. Rao began treating Mrs. Dymburt at about 11:50 p.m. and delivered her baby approximately six hours later by cesarian section. Mrs. Dymburt's child was born with terminal brain damage and died on May 20, 1992. Mrs. Dymburt suffered a ruptured bladder and uterus. It is plaintiffs' contention that Mrs. Dymburt's injuries and her child's death were caused by the negligence of defendants Drs. Tan and Rao.

Dr. Tan brings this motion for partial summary judgment arguing that she is only liable for her own negligence, if any, and that any negligence found against Dr. Rao may not be imputed to her as a matter of law.

### Argument

### Standard of Review

■ Pursuant to Fed.R.Civ.P. 56(c), summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* In making this determination, a court must draw all inferences in favor of the non-movant. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 fn. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104

S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *United States v. 225 Cartons*, 871 F.2d 409, 419 (3d Cir.1989).

■ When deciding a motion for summary judgment, the judge's function is not to weigh the evidence to determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An issue is "genuine" if a reasonable jury could hold in the non-movant's favor with regard to that issue. *Id.* at 248, 106 S.Ct. at 2510. A fact is "material" if it influences the outcome of the action under the governing substantive law. *Id.* Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.* at 249, 106 S.Ct. at 2511; *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir.1989).

■ When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' —that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of any genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is merely "colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. The non-moving party must come forward with more than a mere scintilla of evidence in its favor. *Carlson v. Arnot–Ogden Memorial Hosp.*, 918 F.2d 411, 413 (3d Cir.1990).

When a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to

raise a disputed factual issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the [non-moving] party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552.

### Agency

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 337, 634 A.2d 74 (1993) (citing *Arcell v. Ashland Chemical Co.*, 152 N.J.Super. 471, 494–95, 378 A.2d 53 (1977)); 2A C.J.S. Agency § 37 (1972); Restatement (Second) of Agency § 1 (1958).

The Third Circuit recently clarified the law of agency in *AT & T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir.1994). According to the Third Circuit an agent may be a servant or an independent contractor.

A servant is a person who is employed to perform personal services for another in his affairs, and who, in respect to his physical movements in the performance of the service, is subject to the other's control or right of control. Persons who render service but retain control over the manner of doing it are not servants.

*Winback* at 1435 (quoting *Sanders v. Rowan*, 61 Md.App. 40, 484 A.2d 1023, 1028 (1984) (quoting *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 119 A.2d 423, 427 (1956))).

"All agents who are not servants are 'independent contractors'. Moreover, all non-agents who contract to do work for another are also termed 'independent contractors'". *Winback* at 1435. Generally, independent contractors are self-employed, are not paid a salary, do not use the instrumentality of the principal, are skilled laborers, and work unsupervised. *Id.* at 1435–37; *See, Baldasarre v. Butler*, 132 N.J. 278, 291, 625 A.2d 458 (1993); *See also,* Warren A. Seavey, Agency, § 84 at 142 (1964).

■The distinction between servants and independent contractors is significant due to the liability implications for the principal.

"If the principal is the master of an agent who is his servant, the fault of the agent, if acting within the scope of his employment, will be imputed to the principal by reason of respondeat superior." *Baldasarre* at 291, 625 A.2d 458. (Quoting *JMB Enter. v. Atlantic Employers Ins.*, 228 N.J.Super. 610, 617, 550 A.2d 764 (1988). Whereas, the principal, owner, or employer will not be held liable for the torts of an independent contractor. *Winback* at 1435. With regard to an independent contractor-agent, a principal may be liable for the misrepresentations, fraud or deceit committed by its independent contractor-agent "upon matters which the principal might reasonably expect would be the subject of representations, provided the other party has no notice that the representations are unauthorized." *Sanders v. Rowan*, 61 Md.App. 40, 484 A.2d 1023, 1029 (quoting Restatement (Second) of Agency § 258).

■ The Court finds that Dr. Tan and Dr. Rao were not engaged in an agency relationship. Thus, Dr. Rao's liability resulting from her own negligence may not be imputed on Dr. Tan. Both doctors are independent contractors in the sense that they are solo practitioners deriving their livelihood from their own practices, are highly skilled, and work without supervision of the other. In fact, the purpose of the coverage arrangement was specifically to enable them to take time away from their practice, and it is clear to this Court that physicians are not expected nor should they be encouraged to work twenty-four hours a day, seven days a week. Furthermore, plaintiffs have not alleged any misrepresentations or deceit by Dr. Rao that would bring about liability based upon an independent contractor-agency theory. Thus, the Court rejects plaintiffs' argument that Dr. Rao was the agent of Dr. Tan, thereby justifying the imputation of any liability found against Dr. Rao upon Dr. Tan.

### Apparent Authority

■ An agency relationship need not exist for the doctrine of apparent authority to apply. "Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority." The

doctrine is a way of creating an agency relationship because it "imposes liability, not as the result of the reality of a contractual relationship but rather because of the actions of a principal or an employer in somehow misleading the public into believing that the relationship or the authority exists." *Arthur v. St. Peters Hospital,* 169 N.J.Super 575, 580, 405 A.2d 443 (1979).

In *Arthur,* the plaintiff was treated in the emergency room of a hospital for an injured wrist. The plaintiff was x-rayed and then released upon a negative finding. However, later the plaintiff learned that his wrist was in fact fractured. As a result the plaintiff sued the doctors who treated him and read the x-ray and the hospital. The hospital filed for summary judgment arguing that the treating physicians were independent contractors. The Court denied the hospital's motion based on the doctrine of apparent authority finding that the hospital failed to establish the independent contractor status of the physicians and that the facts permitted the inference that the hospital held the emergency room doctors out as employees. *Arthur* at 584, 405 A.2d 443.

The Court finds that the relationship between Dr. Tan and Dr. Rao is not akin to the relationship between a hospital and its emergency room physicians. The Court points out that the court in *Arthur* took judicial notice of the following facts:

> [G]enerally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom it might be expected to come into contact, it would be

natural for him to assume that these people are employees of the hospital.

*Arthur* at 583, 405 A.2d 443.

Mrs. Dymburt was cognizant of the fact that Dr. Tan is a solo practitioner. Furthermore, Mrs. Dymburt concedes that she was told by Dr. Tan that Dr. Kim covers for her when she is not on call. Dep. of Maria Dymbert, January 27, 1994 at p. 79. However, plaintiffs claim that Dr. Tan did not mention the possibility of Dr. Rao covering for her. The amount of information possessed by Mrs. Dymburt is a contested issue of fact. Dr. Tan contends that she informed Mrs. Dymburt of her coverage arrangement at the outset of their relationship and provided her with a brochure or pamphlet on the subject. Oral Arg., March 27, 1995.

The Court finds that this fact is not material to the issue of apparent authority. Giving Mrs. Dymburt the benefit of every factual inference, as the Court must do, the Court finds as a matter of law that apparent authority does not exist. First, plaintiffs concede that if the identity of the covering physician was disclosed to Mrs. Dymburt, then the apparent authority doctrine cannot apply. Second, the Court finds that Mrs. Dymburt had sufficient knowledge of Dr. Tan's coverage arrangement to know that Dr. Tan being a solo practitioner and unable to work twenty-four hours a day, seven days a week, may not be the doctor present at her delivery, even though she was her regular physician.[1] Dr. Tan is an individual physician who Mrs. Dymburt entrusted to deliver her child. In *Arthur,* the court took judicial notice of the 'natural assumption' and 'reasonable expectation of the public' that hospitals employ its staff and are liable for their negligence. The same assumptions and expectations do not exist in the case *sub judice.* To the contrary, the Court finds and takes judicial notice of the fact that coverage arrangements such as this one are universal in the field of medicine and are expected and accepted by the public in general. Furthermore, the Court notes

---

1. This is not to say that the Court condones a practice of failing to inform a patient of the covering arrangements in place. However, since Mrs. Dymburt was aware that Dr. Tan had coverage, the Court finds that the dispute over whether Mrs. Dymburt knew specifically of Dr. Rao should not drive the Court's decision regarding the applicability of the apparent authority doctrine.

that relieving Dr. Tan from the imputation of Dr. Rao's negligence does not exempt Dr. Tan for any of her own negligence that Mrs. Dymburt may prove. For example, Dr. Tan may be found liable for negligence in her designation of Dr. Rao as the covering doctor, for her participation in diagnosis or treatment, or for failing to advise the covering doctor of potential risks.

### Precedent and Public Policy

The Court's decision not to extend liability to Dr. Tan for any negligence found against Dr. Rao is consistent with precedent in this jurisdiction and others and comports with important public policy goals.

 The majority rule in New Jersey is that a physician cannot be held liable for the negligence of another physician who he sent to attend a patient in his place. *Claus v. Brodhead,* 36 N.J.Super. 598, 604, 116 A.2d 725 (Law Div.1955); *Myers v. Holborn,* 58 N.J.L. 193, 195, 33 A. 389 (E & A 1895). In *Myers,*

> Dr. P. and the defendant were each of them practicing physicians of this state, having no business connection with one another, except that Dr. P. was attending the patients of the latter while he was temporarily absent. Even if he admitted, therefore, that Dr. P. was employed by the defendant to attend upon the wife of the plaintiff, that fact did not render the defendant liable for his neglect or want of skill in the performance of service, for an examination of the authorities will show that a party employing a person who follows a distinct and independent occupation of his own is not responsible for the negligent or improper acts of the other.

*Myers* at 195, 33 A. 389.

This same rule applies in New York. In *Kavanaugh v. Nussbaum,* 71 N.Y.2d 535, 542, 528 N.Y.S.2d 8, 523 N.E.2d 284 (1988), the court held that "a physician who designates another doctor to 'cover' for him, in the circumstances presented, is not liable for the covering doctor's own negligence in treating the regular physician's patient." The court recognized and this Court agrees that doing otherwise would enlarge the liability of doctors in a way that would discourage physi-

cians from entering into coverage arrangements and perhaps curtail medical services to patients whose regular doctor is unavailable.

### Conclusion

For the foregoing reasons, the Court finds as a matter of law that no agency relationship exists between Dr. Tan and Dr. Rao and that the doctrine of apparent authority is not applicable to the facts presented. Thus, the Court grants Dr. Tan's motion for partial summary judgment because as a matter of law any negligence found to have been committed by Dr. Rao may not be imputed upon Dr. Tan.