LAWYERS TITLE INSURANCE COR-
PORATION, a Virginia Corporation,
as Assignee and Subrogee of Option
One Mortgage Corporation, a Califor-
nia Corporation, Lawyers Title Insur-
ance Corporation, in its own right,
and Option One Mortgage Corpora-
tion, in its own right, Plaintiffs,

v.

PHILLIPS TITLE AGENCY,
et al., Defendants.

Civil Action NO. 02–656 (JEI).

United States District Court,
D. New Jersey.

March 14, 2005.

Madden, Madden & Del Duca, P.A., by Patrick J. Madden, Esq., Haddonfield, NJ, for Plaintiff Lawyers Title Insurance Corporation.

Dwyer, Connell & Lisbona, by Donald T. Okner, Esq., Fairfield, NJ, for Defendant Central Title Agency, Inc.

## OPINION

IRENAS, Senior District Judge.

This is a diversity action brought by Plaintiff Lawyers Title Insurance Company, as the assignee and subrogee of Option One Mortgage Corporation, and in its own right, against Phillips Title Agency, Jay Phillips, Susan Brown, Central Title Agency, Robert Poole, Stephen Poole, All States Financial Funding, and Fleet Bank, to recoup losses from a mortgage loan that Option One Mortgage Corporation was fraudulently induced to make. Presently before the Court is the Plaintiff's Motion for Partial Summary Judgment, pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below we grant the Plaintiff's motion.

## I.

This lawsuit arises from Jay Phillips' fraudulent scheme to induce a mortgage lender to provide a mortgage for a fabricated real estate sale and abscond with the proceeds. In late 2000, John "Jay" Phillips ("Phillips") secured a mortgage from Option One Mortgage Corporation ("Option One") in the name of his cousin, Kevin Phillips, for the purported purchase of a property located at 665 Garwood Road, in Moorestown, New Jersey ("665 Garwood Road"). The entire transaction, however, was apparently concocted by Phillips, including the contract for sale and the deed. Neither Kevin Phillips nor the purported seller, Dr. Anthony Del Rossi ("Del Rossi") were party to or aware of the sale that was being conducted in their names. Del Rossi discovered the purported sale after he began receiving mail addressed to Kevin Phillips at his property.

Phillips was the owner of Phillips Title Agency ("Phillips Title"). Phillips Title had an arrangement with Central Title Agency ("Central Title") in which Phillips Title would refer customers to Central Title and perform certain closing services in return for a twenty percent commission on any resulting title insurance premium received by Central Title, and a fee of $300 per closing. (Dep. of R. Poole, 23:13–19, 27:3–7.) When Phillips Title received a title order from one of its customers, the agency would send the order to Central Title for processing and the preparation of a title binder. Central Title would send the materials back to Phillips Title, which would execute the actual closings of the mortgages and sales.

Susan Brown ("Brown"), a Phillips Title employee, was the designated "closer" for

transactions referred to Central Title. Brown was also a notary public. Once a closing occurred, Brown would send the closing documents back to Central Title. The mortgage company would then transfer the loan monies to Central Title's trust account, and Brown would issue the checks from that account and distribute the proceeds to the seller or to the seller's mortgage loan company. (Dep. of S. Brown, 25:3–21.) One of the principals of Central Title, Robert Poole, reviewed the company's closing procedures with Brown and met with her several times to observe and oversee her work.

Phillips exploited his relationship with Central Title to obtain the necessary title insurance for the purported sale. Central Title had been since 1996 the New Jersey agent of Lawyers Title Insurance Corporation ("Lawyers Title"), a Virginia corporation. Lawyers Title authorized Central Title to issue title insurance commitments, policies and endorsements on its behalf for real estate transactions in New Jersey. For the sale of 665 Garwood Road, Lawyers Title policies were issued to Kevin Phillips and Option One.

Phillips' scheme was enabled, wittingly or unwittingly, by Brown. On Friday, December 1, 2000, Brown prepared the closing package from Option One and other documents for the closing and gave them to Phillips. Brown originally intended to attend the closing, but Phillips offered to do it himself over the weekend. She told him to get the closing package and the sale

documents notarized and bring them to her on Monday morning. On Monday, December 4, Phillips brought the documents back to Brown signed but without notarization. He asked her to notarize the documents and she complied, despite not witnessing the signatures herself. (Dep. of S. Brown, 31:17–33:13.) She then issued two checks from Central Title's bank account, and gave these checks to Phillips. One check was made out to Jefferson Bank for $305,250.08 for the payoff of the first mortgage loan on the property. The other was made out to Del Rossi for $166,106.86. Phillips forged endorsements on the two checks and deposited them in his Summit Bank account for another of his businesses, Greenway Village, LLC.

Option One filed a ten-count complaint in the District of New Jersey on February 14, 2002, pursuant to 28 U.S.C. § 1332. Phillips Title Agency,[1] Jay Phillips,[2] Susan Brown, Central Title Agency, Kevin Phillips,[3] Robert Poole, Stephen Poole, All States Financial Funding[4] and Fleet Bank[5] were named as Defendants. The Complaint alleges various state law claims, including fraud, breach of contract, negligence, conversion and conspiracy to convert and commit fraud. On November 24, 2003, Central Title, Robert Poole and Stephen Poole filed a third-party complaint against Lawyers Title. On March 8, 2004, Lawyers Title filed a counterclaim against Central Title.[6]

On February 5, 2004, Lawyers Title paid Option One $500,000 in fulfillment of its

---

1. Phillips Title Agency, Inc., was also included in the list of defendants but does not appear to be a separate entity.

2. "Jay Phillips, Inc." and "J. Phillips, Inc." were named as defendants in the original Complaint. Jay Phillips was added as an individual defendant in the First Amended Complaint, filed on March 5, 2002.

3. Kevin Phillips was added as a defendant in the First Amended Complaint.

4. The Court granted summary judgment for All States Financial Funding on October 14, 2004.

5. Named as successor in interest to Summit Bank.

6. Various other cross-claims and third party complaints have been filed but none are the subject of the instant motion.

obligations under the title insurance policy issued in connection with the sale of 665 Garwood Road. Option One released Lawyers Title from any further claims under the policy and assigned its rights against the defendants in this action to Lawyers Title on April 15, 2004. Lawyers Title filed the instant motion for partial summary judgment against Central Title and Jay Phillips on December 7, 2004, in its own right and as assignee and subrogee of Option One.

## II.

Under Fed.R.Civ.P. 56(c) a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

The New Jersey Agency Agreement ("the Agreement") executed by Lawyers Title and Central Title commits Central Title to issue title insurance policies on behalf of Lawyers Title, in return for a commission on the premiums due on the policies. Paragraph 9 of the Agreement sets forth Central Title's specific duties as the agent of Lawyers Title. Section (a) requires Central Title to: "Receive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules, regulations, bulletins, manuals and instructions of the Principal and its subsidiaries ..." Section (g) provides that Central Title shall: "Comply with all applicable statutes, rules and regulations relating to the conduct of Agent's business ..."

The Agreement does not specifically require Central Title to perform real estate sale closings. Its terms, however, anticipate that Central Title may conduct closings due to the circumstances of a particular transaction or as a result of local custom, such as the practice in southern New Jersey of having a title agent handle the closing.[7] For example, Paragraph 7(b) of the Agreement requires Central

---

**7.** In *Sears Mortgage Corp. v. Rose,* 134 N.J. 326, 339–40, 634 A.2d 74 (1993), the New Jersey Supreme Court described the role that title agents play at real estate closings in southern New Jersey:

In south Jersey, many, if not most, purchasers do not have their own attorneys. The title company's representative, a "title agent," attends the closing. The title agent, the expert witnesses tell us, presides over the closing as someone like a "cruise director." Title insurers maintain escrow accounts for the purpose of holding funds necessary to complete the closing, remove all exceptions, and secure clear title. The agent undertakes to remove exceptions from the title commitment and accepts the deed and mortgage and other documents incidental to title. The agent disburses all funds to complete the closing. He or she also attends to the paying off and discharging of any existing liens; with respect to any mortgage the agent obtains a payoff

Title to obtain "[f]idelity bond coverage on all employees of Agent who conduct settlements or closings where disbursements and funds are handled by Agent and/or Agent's employees." Paragraph 11, entitled "Liability of Agent," includes in subsection (e) that the Agent will be liable for losses resulting from "[a]ny improper closing or attempted closing by the agent." The Agreement thus acknowledges that Central Title acts on Lawyers Title's behalf and conducts Lawyers Title's business in performing a closing.

Paragraph 11 defines the instances in which Central Title will be liable for any losses resulting from its conduct on behalf of Lawyers Title. It provides:

"Agent shall be liable to and agrees to indemnify and save harmless Principal for all attorney's fees, court costs, expenses, liability, damage, and loss or aggregate of losses resulting from acts or omissions of Agent caused by the Agent's gross negligence, fraud, or failure to use ordinary care in the performance of its duties, hereunder ..."

The Agreement includes a non-exclusive list of acts or omissions for which the Agent shall be liable to the Principal in Sections (a) through (h).

Two items on that list are particularly relevant to the matter at issue here. Section (d) includes: "Failures of Agent to comply with the terms of this Agreement, or with the rules, regulations, bulletins, manuals, or instructions given by Principal or its subsidiaries ..." Section (e) provides: "Any improper closing or attempted closing by the Agent, including but not

statement and sends the appropriate check to the mortgagee to satisfy the mortgage and then records the cancellation or discharge of the mortgage. The title agent also authorizes the issuance of the title-insurance policy. Even when the buyer has an attorney at a south Jersey closing, the title agent still performs those functions.

limited to (1) loss or misapplication of customer funds, documents, or other things of value entrusted to Agent in any custodial or fiduciary capacity, (2) failure to disburse properly or close in accordance with escrow or closing instructions, (3) misappropriation of escrow or closing funds ..."

Lawyers Title's liability under the Agreement is defined in Paragraph 12:

"As between Principal and Agent, Principal shall be liable for all losses, damages, expenses and costs arising out of claims covered by and based upon any title insurance commitments, policies or endorsements issued under the terms of this Agreement, excepting therefrom only those losses, damages, expenses, and costs caused by actions, omissions or violations of this Agreement for which the Agent is made responsible."

The division of liability contained in this section restates and reinforces the provisions of Paragraph 11.

Lawyers Title argues that Central Title is liable to it under Paragraph 11 of the Agreement for the wrongful conduct of Brown and Phillips. It argues that Brown negligently notarized forged signatures on the deed, note and mortgage for the sale of 665 Garwood Road, and that Phillips fraudulently concocted the entire transaction and absconded with the mortgage proceeds. Lawyers Title contends that Brown and Phillips were agents of Central Title, and therefore their misconduct is imputed to Central Title. Lawyers Title maintains that this wrongdoing falls within Section (e), relating to improper closings and the improper disbursement or misappropriation of escrow or closing funds.[8]

8. Lawyers Title also claims that Central Title is generally liable to it under the principles expressed in the Restatement (Second) of Agency §§ 379(1), 382, 401, and 402, and as the subrogee of Option One's rights. As a result of the conclusion reached under the liability provisions of the Agreement, it is un-

Central Title disputes that Brown and Phillips were its agents. It argues that they were instead independent contractors, for whose torts Central Title is not liable. Alternatively, it argues that if the Court should find that Brown and Phillips were its agents, Central Title is not liable for their unauthorized acts. Central Title also contends that it should not be required to indemnify Lawyers Title because Lawyers Title initiated the relationship between Central Title and Phillips Title. Central Title does not dispute that the actions of Brown and Phillips were wrongful or fell within the scope of Paragraph 11, but argues only that it should not be responsible for those acts.

### A.

█ Central Title made Phillips Title, Phillips and Brown its subagents for the purposes of fulfilling Central Title's obligations to Lawyers Title when it delegated to Phillips Title and Brown the performance of the closings for clients referred by Phillips Title. The Restatement (Second) of Agency § 5 provides that "[a] subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible." Restatement (Second) of Agency § 5 (1958).

Central Title was primarily responsible for the conduct of Phillips Title and Brown. Central Title oversaw Brown's activities in closing its transactions and instructed her on Central Title's closing procedures. Central Title held Brown out as its agent, adding her as a signatory on its bank account and listing her as the settlement agent on the HUD–1 form. Although Lawyers Title may have reviewed the transactions closed by Brown, Central Title was primarily responsible for overseeing her work. Additionally, the Agreement anticipates that Central Title will be liable for the actions of any subagents it appoints, from its requirement of fidelity bond coverage for all employees to its references to employees and subcontractors in the liability provisions.[9]

Central Title is liable for the acts of its subagents. Restatement (Second) of Agency § 406 provides that "an agent is responsible to the principal for the conduct of a subservient or other subagent with reference to the principal's affairs entrusted to the subagent, as the agent is for his own conduct." Restatement (Second) of Agency § 406 (1958). There is no question that Central Title would be liable for Brown's actions if she were its own employee. However, Central Title cannot avoid liability simply by having a non-employee conduct closings.

Paragraph 15 of the Agreement provides that "[n]either this Agreement nor any right, interest, or duty arising under it is transferable, assignable, or delegable by

necessary for the Court to address those claims.

9. There is no dispute that Central Title had the authority to delegate the handling of closings to Phillips Title and Brown. *See* Restatement (Second) of Agency § 80 (1958) (authority to appoint subagents to conduct a transaction inferred from authority of agent to conduct such transactions for the principal where the agent is a corporation or other entity, the appointment of subagents for the performance of such transactions is common,

or principal has reason to know that agent uses subagents). Lawyers Title was aware of and apparently consented to the relationship between Central Title and Phillips Title. A Lawyers Title employee, Terry Gupko–Swope, introduced the principals of Central Title and Phillips Title, and praised Brown as an experienced "closer" to the Central Title principals. However, there is no indication that Terry Gupko–Swope or anyone at Lawyers Title knew of any past or present fraudulent activities by Phillips Title or Phillips.

either party hereto without the prior written consent of the other." Central Title's duties under the Agreement specifically include processing title insurance applications in an ethical manner in accord with applicable rules, regulations and instructions (Agreement, ¶ 9(a)), and implicitly include using ordinary care in conducting Lawyers Title's business (Agreement, ¶ 11). Although Central Title delegated the actual physical work of conducting the closing to Brown, it did not and could not delegate to her its duty to ensure that the closing was properly performed as well.

Central Title's argument that it is not liable for any wrong-doing by Phillips Title and Brown because they were independent contractors and not agents misses the mark. The categories of agent and independent contractor are not mutually exclusive.[10] Some independent contractors are agents, and a principal may be liable for their actions. *See* Restatement (Second) of Agency § 2 (1958). The crucial distinguishing feature between agent independent contractors and non-agent independent contractors is that an agent independent contractor has a fiduciary relationship with the principal, as existed here. Additionally, Phillips Title and Brown had the power to bind Central Title, a power possessed by agent independent contractors, but not non-agent independent contractors. Restatement (Second) of Agency § 12 (1958)("An agent or apparent agent holds a power to alter the legal relations between the principal and third persons").

"[W]hile generally principals are not liable for the torts of their independent contractors, the common law is littered with exceptions ..." *American Tel. & Tel. Co. v. Winback and Conserve Program,* 42 F.3d 1421, 1437 (3d Cir.1994). The Third Circuit noted that in *Sears Mortgage Corp. v. Rose,* 134 N.J. 326, 634 A.2d 74 (1993), the New Jersey Supreme Court "eviscerated" the proposition that principals are never liable for the torts of their independent contractors. *Id.* at 1436 n. 17. *Sears Mortgage Corp.* held that a title insurer was liable to the purchaser of a property for the theft of funds by the buyer's attorney who served as a closing agent for the transaction. *Sears Mortgage Corp.,* 134 N.J. at 346, 634 A.2d 74. The New Jersey Supreme Court held that the buyer's attorney was an agent of the title insurer. *Id.* "Since it can in no way be argued that the attorney was the title insurer's servant, the [New Jersey Supreme Court] implicitly recognized the category of agent independent contractors." *Winback,* 42 F.3d at 1436 n. 17.

Central Title is correct that principals are not liable for the acts of agents outside the scope of their authority. Central Title certainly would not be liable for any losses caused by Phillips Title in issuing homeowner's or automobile insurance. The issue in this case, however, is Central Title's liability for losses due to the negligent and fraudulent *manner* in which Phillips Title closed the transaction. Closing a transaction is squarely within the scope of Phillips Title's authority as a subagent Central Ti-

---

**10.** Agents are generally divided into two categories—servants and independent contractors—"depending on the right of control capable of being exercised by the principal." *Am. Tel. & Tel. Co. v. Winback,* 42 F.3d 1421, 1434–35 (3d Cir.1994). "[I]f 'the employer assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract,' a master-servant agency relationship has been created. If, however, the agent is not subject to that degree of physical control, but is only subject to the general control and direction by the principal, the agent is termed an independent contractor. Thus, all agents who are not servants are 'independent contractors.' " *Id.* at 1435 (internal citations omitted).

tle. The common law is filled with instances where a principal is liable for harms arising from its agent's failure to conduct matters within the agent's authority in the manner prescribed by the principal. *See, e.g., Dymburt v. Rao,* 881 F.Supp. 942, 945 (D.N.J.1995)("With regard to an independent contractor-agent, a principal may be liable for the misrepresentations, fraud or deceit committed by its independent contractor-agent 'upon matters which the principal might reasonably expect would be the subject of representations, provided the other party has no notice that the representations are unauthorized.' ").

### B.

██ Lawyers Title contends, and Central Title does not dispute, that Brown failed to use ordinary care in conducting the closing and that Phillips committed fraud. Central Title also concedes that these wrongful actions fell within the liability provisions of Paragraph 11.

The closing of the deed, note and mortgage for 665 Garwood Road was unquestionably improper. Brown admits that she improperly notarized the signatures on the HUD–1 form, the mortgage, the note and the deed. (Dep. of S. Brown, 33:4–22.) She notarized the documents without witnessing the signatures of Kevin Phillips and Anthony Del Rossi, in violation of the rules governing notaries and the express terms of the closing instructions sent by Option One.[11] In fact, she had never met Kevin Phillips or Anthony Del Rossi, but had only spoken to Kevin Phillips briefly on the phone. Based on these improperly notarized signatures, she disbursed the seller's proceeds to Phillips. Brown's failure to exercise due care in notarizing the documents compounded Phillips' fraud in

concocting the purported sale and stealing the proceeds.

The HUD–1 form executed and notarized by Brown is on its face suspect and possibly fraudulent. The form states that no cash was given to the purported seller by the purported buyer. The excess amount of the sale above and beyond the $500,000 mortgage was accounted for in two credits to the borrower, one for $10,000 and one for $375,059.44. This transaction was to involve no payment of cash from the buyer to the seller—the only money to be exchanged was money loaned by Option One. Option One thought it issued a $500,000 mortgage for an $850,000 sale, when in fact the HUD–1 reflects that the purported buyer paid only $475,636.94 for the property, plus $34,363.06 in settlement charges.

The HUD–1 form purportedly signed by Kevin Phillips and Anthony Del Rossi was in fact the second HUD–1 prepared for this sale by Brown. The first form did not include the credit of $375,059.44. Brown testified at her deposition that Phillips told her that Anthony Del Rossi agreed to the credit. (Dep. of S. Brown, 35:20–36:8.) She testified that she told Phillips to get the change initialed by the buyer and seller, which was never done. (*Id.*) As an experienced settlement agent, Brown knew that credits of that size were unusual, (*id.* at 38:7–9), yet she still notarized the documents without witnessing the signatures and despite the fact the HUD–1 changes were not initialed.

Brown's improper closing of the sale of 665 Garwood Road clearly falls within Paragraph 11, Section (d). She did not follow the closing instructions from Option One when she notarized the closing docu-

---

**11.** The "Instructions to Closing Agent" sent by Option One to Central Title and passed on to Brown specifically state: "ALL documents must be signed exactly as they are prepared and properly notarized as needed. NO changes may be made to ANY document unless prior approval is received from The Lender." (Emphasis in original.)

ments without witnessing the signatures of the purported buyer and seller. She improperly disbursed the mortgage proceeds knowing that the documents were not correctly notarized. Additionally, Brown violated her duty as contained in Paragraph 9, Section (g), to "[c]omply with all applicable statutes, rules and regulations relating to the conduct of Agent's business" when she improperly notarized the documents and closed the sale. Such a violation of her duties also triggers Paragraph 11, Section (d), which subjects Central Title to liability for "[f]ailures of Agent to comply with the terms of this Agreement, or with the rules, regulations, bulletins, manuals, or instructions given by Principal or its subsidiaries."

■ More significant than Brown's negligence are the fraudulent acts of Phillips. Phillips created the entire sale of 665 Garwood Road out of whole cloth, and falsified applications for title insurance and a mortgage. He misappropriated closing funds that were to be delivered to the purported seller and the bank holding the purported seller's mortgage. His actions were clearly fraudulent conduct for which Central Title is liable under Paragraph 11, Section (e), requiring Central Title to indemnify Lawyers Title for losses due to the fraudulent or negligent conduct of a closing.

Additionally, Phillips' conduct violated several duties owed by Central Title to Lawyers Title pursuant to the Agreement. Phillips did not "[r]eceive and process applications for title insurance in a timely, prudent and ethical manner," as required by Paragraph 9, Section (a). He did not "[c]omply with all applicable statutes, rules and regulations relating to the conduct of Agent's business," as required by Paragraph 9, Section (g). These derelictions of

duty subject Central Title to liability under Paragraph 11, Section (d), which requires Central Title to indemnify Lawyers Title for any losses due to the fraudulent or negligent failure to comply with the terms of the Agreement.[12]

### IV.

Summary judgment will also be granted against Jay Phillips. Phillips has not opposed this motion, and there is no dispute of fact regarding his actions nor any question of their wrongfulness.

### V.

For the reasons set forth above, the Court will enter partial summary judgment for Lawyers Title against Central Title and Jay Phillips. The Court will issue an appropriate order.

### ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CENTRAL TITLE AGENCY AND JAY PHILLIPS

This matter having appeared before the Court upon Plaintiff Lawyers Title Insurance Corporations's Motion for Partial Summary Judgment, the Court having considered the submissions of the parties, for the reasons set forth in an Opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing;

**IT IS** on this *14th* day of March, 2005,

**ORDERED THAT:**

Plaintiff's Motion for Partial Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure is hereby

---

12. As a result of this Court's holding that Central Title is liable to Lawyers Title under the Agreement, it is unnecessary to address the claim brought by Lawyers Title as assignee and subrogee of Option One.

**GRANTED** as to Defendants Central Title Agency and Jay Phillips.