**Jerry STOREY, Appellant–Plaintiff,**

v.

**Theodore S. LEONAS, Jr., and Leonas & Associates, Ltd., Appellees–Defendants.**

**No. 46A03–0806–CV–300.**

Court of Appeals of Indiana.

April 3, 2009.

Rehearing Denied June 10, 2009.

Kenneth J. Allen, David W. Conover,
William Lazarus, Kenneth J. Allen & Asso-

ciates, P.C., Valparaiso, IN, Attorneys for Appellant.

Edward R. Moor, Michael C. Bruck, Williams Montgomery & John Ltd., Chicago, IL, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Jerry Storey appeals the trial court's orders dismissing his claims for malpractice and conversion against appellees-defendants Theodore S. Leonas, Jr., and Leonas & Associates, Ltd. (collectively, Leonas), and barring Storey's expert witnesses from testifying at trial. Storey argues that the trial court erroneously entered judgment in Leonas's favor on Storey's claims for legal malpractice and conversion.

We find that the trial court properly found that Indiana law applies to resolve Storey's claims but improperly barred evidence that the underlying lawsuit was filed and settled in Illinois court. Nonetheless, inasmuch as we find that the trial court properly barred Storey's expert witnesses, Storey's malpractice claim cannot survive because he cannot establish a breach of duty. Additionally, we find that the trial court properly entered judgment in Leonas's favor on the conversion claim because Leonas merely acted at the instruction of his client and, in any event, the action is based upon the failure to pay a debt, which does not constitute conversion. Thus, we affirm.

## FACTS

### The Illinois Wrongful Death Action

On December 23, 2000, Storey's adult daughter, Tara Storey, an Illinois resident, was a passenger in a car being driven by another individual in Michigan City. Another vehicle, owned by Chicago-based Heniff Transportation Systems, Inc. (Heniff), and being driven by a Heniff employee, allegedly ran a red light, entered an intersection, and struck the vehicle in which Tara was a passenger. Tara died as a result of the accident. She was not married and had no children.

Tara's mother and Storey's ex-wife, Delia Blair, hired Leonas to file a wrongful death action. At some point before the wrongful death action was filed on January 18, 2001, in Cook County, Illinois, Blair was named Special Administrator of Tara's Estate. Blair filed the wrongful death action as Special Administrator and as an individual. The wrongful death complaint stated that Tara's next of kin were Storey and Blair, both of whom sustained pecuniary damages. Appellant's App. p. 87.[1]

### The Illinois Settlement

In May 2001, Heniff offered to settle the lawsuit for $650,000. Leonas relayed the offer to Blair, who accepted it the same day. On May 25, 2001, the wrongful death claim was officially settled, and the trial court found that it was a good faith settlement and dismissed the lawsuit with prejudice.[2] Leonas did not request that the trial court determine proper ex-

---

1. On January 26, 2001, Storey filed a wrongful death action against Heniff, ostensibly as Special Administrator for Tara's estate, notwithstanding the fact that Blair had already been named Special Administrator. Leonas offered to have Storey's attorney named as co-counsel in Blair's lawsuit, but Storey declined and pursued his own lawsuit instead. Storey's lawsuit was eventually dismissed with prejudice.

2. In Illinois, if a settlement is found to have been made in good faith, the settling party is discharged from any potential liability to other tortfeasors for contribution. *Dixon v. Chicago & N.W. Transp. Co.*, 151 Ill.2d 108, 176 Ill.Dec. 6, 601 N.E.2d 704, 706 (1992). Thus, the good faith finding protected Heniff from any future claims for contribution.

penses, including attorney fees, and order distribution of the remaining proceeds to the next of kin pursuant to 740 ILCS 180/2, and the trial court made no such determination or order. Leonas testified that he took one-third of the $650,000 settlement as his fees.

On August 9, 2001, Leonas sent a letter to Storey's attorney, enclosing a check for $144,000 as Storey's share of the settlement. Leonas explained, "[t]his check represents that amount designated by Mrs. Blair for disbursement to Jerry Storey as the result of her decision to settle her legal cause of action in the above-captioned matter." Appellant's App. p. 110. Storey's attorney responded by letter on September 25, 2001, returning the $144,000 check and explaining that Storey

> will conditionally accept this payment but only on the following terms: (1) written assurance is given by you or your client that Tara's siblings are also receiving the same amount, so that the allocation will be one-third to the siblings, one-third to mom and one-third to dad; (2) acceptance of this sum does not constitute nor will it be construed as a settlement or waiver of any other claims brought by Mr. Storey, individually or in his capacity as personal representative of Tara's estate, against any party, nor shall it constitute acceptance, endorsement or acquiescence in the terms of any settlement already reached between your client and any other party.
>
> If these terms are agreeable, please reissue your check made payable to the Trust Account of [Storey's attorney] and forward it to my Valparaiso office. If these terms are not agreeable, please place this $144,000 in an interest bearing account or money market fund for the benefit of Jerry Storey and forward

proof of such an account to me at your soonest convenience....

*Id.* at 113.

On November 16, 2001, Leonas responded and set forth a "short historical review" of the events that had occurred up to that point. Among other things, Leonas explained that he and Blair had decided to file the wrongful death claim in Illinois because "Illinois case law seemed to provide a significant possibility of persuading the Cook County Court to retain jurisdiction in this matter. Obviously, that would be beneficial since[, unlike in Indiana,] there is no statutory limit on damages for wrongful death in the State of Illinois." *Id.* at 113.1. Later, having received the settlement offer, Leonas explained that, "[a]fter careful consideration of all of the issues involved, including the possibility that the Illinois Court could find that jurisdiction was not proper, [ ] Blair advised me, on her behalf, to accept the" settlement offer. *Id.* at 113.2. Blair directed Leonas to disburse $144,000 to Storey, which Storey "has elected to refuse." *Id.* at 113.3. Inasmuch as Storey continued to pursue his own lawsuit and "obviously does not consider himself to have been a benefactor in any legal action taken by [ ] Blair," she "has directed me to deny any further disbursement of funds for benefit of [ ] Storey in this matter." *Id.*

### *The Indiana Malpractice/Conversion Action*

On August 14, 2002, Storey filed the complaint at issue herein in LaPorte County, bringing claims of legal malpractice and conversion against Leonas. The complaint alleges that Leonas had breached his fiduciary duty to Storey in one or more of the following ways:

(A) Leonas failed to pursue all available avenues of legal recovery or causes of action on behalf of Tara's Estate;

(B) Leonas failed to conduct an adequate and proper investigation into the facts of Tara's death, and/or the identity of those who were liable for the damages resulting from her death;

(C) Leonas failed to properly communicate with the beneficiaries of Tara's Estate regarding his representation of the Estate and failed to inquire of Tara's family regarding the circumstances of Tara's death and the identity of persons or entities potentially liable for it;

(D) Leonas failed to secure court approval of proposed distribution of settlement proceeds of the wrongful death action he filed on behalf of Tara's Estate;

(E) Leonas extracted an excessive and improper fee from settlement proceeds, which rightly belong to Tara's Estate; and/or

(F) Leonas otherwise failed to use the same care and caution that a reasonably prudent attorney would have used under the same or substantially similar circumstances.

*Id.* at 116.

The case was set for trial on June 7, 2005. On April 29, 2005, Storey filed a motion for partial summary judgment, raising choice of law and attempting to apply Illinois substantive law for the first time in a pleading, and on May 16, 2005, Storey filed a motion to determine the applicable state law. Following a hearing, the trial court denied the motion on June 10, 2005, finding that Storey had waived any right to present evidence of Illinois law by failing to give prior reasonable notice of his intent to do so. In relevant part, the trial court ruled as follows:

9. This cause of action was filed August 14, 2002, well over two and one-half years prior to plaintiff's filing of the motion to determine applicable state law on May 16, 2005. Nothing in the Complaint ... establishes that plaintiff intended or contemplated that Illinois law should govern the resolution of the claims ... the mere fact that plaintiff alleged that [Leonas] had filed proceedings in [Illinois] was insufficient to constitute the "reasonable notice" contemplated in the Act. *Sword v. State [NKC Hosps. Inc.]*, 714 N.E.2d 142, 146–47 (Ind.1999).

10. No other pleadings prior to the motion at issue indicate that plaintiff intended to ask this court to apply Illinois law to the case at hand. As late as March 16, 2005, plaintiff filed his list of contentions, witnesses and exhibits which, once again, failed to apprise defendants of any intention to assert that Illinois law should govern the disposition of his claims against defendants....

11. .... The motion was filed a mere twenty-one ... days prior to trial and, of significance, a mere four ... days prior to the date—May 20, 2005—by which discovery was required to be completed. The opportunity to study the law which will apply to the cause at hand has a direct and consequential effect on the manner in which discovery is conducted, the questions that may be asked, the persons who may be deposed, the documents that may be sought, as well as a host of decisions that may be made as matters of pretrial strategy and preparation. The timing of plaintiff's motion requesting that Illinois law be applied in the trial of this cause effectively foreclosed defendants from conducting a fully-informed approach to discovery in this cause.

... The "playing field" was, simply stated, not level; a distinct advantage in time and ability to prepare motions in

limine and proposed final instructions inured to plaintiff's counsel. . . .

12. When asked at the hearing held on May 31, 2005, as to the reasons why his motion to determine the applicable state law had not been filed at an earlier point in time, [Storey's attorney] offered two reasons. One of those reasons was that he "expected" the case to settle. . . .

The second reason that [counsel] offered at the hearing for the last-minute nature of the motion at hand is that neither he [nor his partner] had worked on the case until the trial date neared but, instead, had entrusted work on the case to [an] associate. . . .

13. For purposes of what may constitute reasonable notice in a given situation, it does not necessarily matter whether a party has failed to provide reasonable notice as a result of oversight, malfeasance, entrustment of work to another less knowledgeable attorney, or as a tactical matter of gamesmanship. The result is the same: the opposing party is denied the opportunity to intelligently conduct discovery, prepare for trial, develop trial strategy, assess the wisdom of settlement and, as would happen here, necessarily have a full opportunity to prepare for motions in limine and/or final instructions.

14. . . . . Plaintiff Jerry Storey has thus waived the issue of choice of law in this case, and the court will implement the law of Indiana in adjudicating this cause. . . .

15. That is true notwithstanding the fact that the trial of this cause has been continued. . . . .

Here, . . . any action for contribution or indemnity that might be asserted [by Leonas] against [Storey's counsel] if Illinois law is applied would be [time-barred by the applicable Illinois statute of limitations]. . . .

Beyond that prejudice to defendants, they have incurred significant expense to date in the discovery process regarding the claim of legal practice, conversion and breach of a fiduciary duty. That expense has included not only the process of discovery itself, but the repetitive litigation that has permeated that process. They should not now, after two and one-half years, be forced to incur additional expenses by reason of plaintiff's failure to comply with the requirement of "reasonable notice". . . .

* * *

16. In reaching [this] determination . . ., the court notes that forty-three motions in limine and other pretrial motions await resolution by this court and that based on experience, the acrimonious relationship of counsel, the history of this case, the reciprocal allegations of legal malfeasance . . ., the thirty plus witnesses and 100 plus exhibits listed on the pretrial order, together with the inability of counsel to submit any evidentiary stipulations, the court has estimated . . . that the trial of this case will occupy seven to eight days. The upshot is that in the interests of judicial economy, as well as the substantial costs to the parties, to the State . . . and to LaPorte County . . ., and to avoid unnecessary inconvenience and significant demands which a trial will ask of jurors, it is critical that the question of applicable state law be a final determination and that the extensive costs and efforts not be set aside and duplicated by reason of any error in this court's decision. . . .

*Id.* at 22–29 (some internal citations omitted). On August 5, 2005, the trial court certified the choice of law issue for interlocutory appeal, but this court declined to accept jurisdiction. The trial court then continued the trial until January 28, 2008,

and denied Storey's July 17, 2006, motion to reconsider its ruling in light of the continuance:

> ... If as plaintiff would have it here, the continuance which followed from that last-minute post-discovery motion to apply the law of another jurisdiction operates to justify the same result sought, the law is relegated to a procedural game that is financially burdensome to the opposing party and its potential need to duplicate prior discovery, as well as the tax payers who fund a judicial system where efficiency should matter. [Storey's attorneys] took two and one-half years to reach their conclusion that Illinois law should apply, ultimately, their motion to that effect was filed four days prior to the close of a discovery period that had been marked by legal scuffling, and professional acrimony, and [a] pretrial discovery hearing.
>
> The record of this proceeding does not simply speak for itself; it proclaims the dubious side of procedural machinations and the inefficient and expensive nature of the results that can sometimes be obtained.

*Id.* at 32.

On November 19, 2007, Leonas filed a motion in limine to bar Storey from presenting evidence that Blair's Illinois wrongful death action could have resulted in a verdict of greater than $300,000, which is the statutory cap on wrongful death damages in Indiana. On January 3, 2008, the trial court granted the motion in limine. Additionally, Leonas had filed a motion to bar Storey's legal experts from testifying, arguing that the experts had not been disclosed in a timely fashion. The trial court granted that motion as well.

On January 14, 2008, Leonas filed a motion for judgment on Count I, arguing that Storey could not establish any dam-ages given that he could not present evidence that Blair could have recovered more than $300,000—given that fact, the $650,000 settlement could not have been malpractice. The trial court summarily granted the motion and dismissed the malpractice count on January 18, 2008, also continuing the trial at that time. Subsequently, Leonas moved for judgment on the conversion claim, and the trial court summarily granted that motion on April 23, 2008. Storey now appeals.

## DISCUSSION AND DECISION

### I. Uniform Judicial Notice of Foreign Law Act

Storey first argues that the trial court erroneously concluded that he failed to provide "reasonable notice" of his intent to request the application of Illinois law as required by the Uniform Judicial Notice of Foreign Law Act (the Act). Ind.Code § 34-38-4-1 et seq. A trial court's ruling on a party's application to apply the law of another jurisdiction pursuant to the Act is reviewed for an abuse of discretion. *Williams v. Graber,* 485 N.E.2d 1369, 1372 (Ind.Ct.App.1985).

The Act provides that

[a]ny party may ... present to the trial court any admissible evidence of such [foreign] laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken of the evidence, reasonable notice shall be given to the adverse parties, either in the pleadings or otherwise.

I.C. § 34-38-4-4. In the absence of reasonable notice, the trial court " 'will presume the law in that [other] jurisdiction is substantially the same as the law in Indiana.' " *Sword v. NKC Hosps., Inc.,* 714 N.E.2d 142, 146 (Ind.1999) (quoting *Harvest Ins. Agency, Inc. v. Inter–Ocean Ins. Co.,* 492 N.E.2d 686, 691 (Ind.1986)).

Our Supreme Court has explained that "[t]he purpose of the notice requirement is to allow the other party time to prepare by studying the applicable law." *Sword*, 714 N.E.2d at 147. The mere facts that an accident occurred in a different state and that a sister action is pending in another state do not constitute reasonable notice within the meaning of the Act. *Id.* And waiting until a summary judgment hearing to raise the issue does not constitute reasonable notice because the party "raised a potentially strategy-altering issue without allowing [the opposing party] any opportunity to prepare." *Id.*

■ Here, Storey litigated for over two and one-half years before raising the choice of law issue. And when he finally raised it, the trial was set to begin twenty-one days later. It is insufficient that the complaint mentions that the underlying wrongful death action was filed in Illinois. It is similarly insufficient that Leonas was questioned about Illinois law in his deposition. Neither of these instances in any way informed Leonas or the trial court that Storey intended to apply Illinois law to this lawsuit. And in any event, Storey admitted that it was either a strategic decision or his attorney's failure to monitor the case that resulted in the late notice of the choice of law issue. Appellant's App. p. 24–25. Thus, even Storey himself acknowledged that the issue had not been sufficiently or timely raised. Under these circumstances, we do not find fault with the trial court's conclusion that Storey did not provide "reasonable notice" of his intent to apply Illinois law to this lawsuit.

■ That conclusion, however, is not the end of our analysis. Although we have found that Indiana law applies to the claims at issue in this lawsuit, i.e., legal malpractice and conversion, that does not mean that we can suddenly pretend that the underlying wrongful death action occurred in Indiana. It is a matter of historical fact that the wrongful death action was filed in Illinois, and that Indiana law applies to the malpractice and conversion claims does not enable anyone to rewrite history.

The factual predicate of these claims is solidly grounded in Illinois. When the parties settled the underlying wrongful death action, the Illinois court had not yet determined which state's law would apply. Thus, Heniff offered a $650,000 settlement because it knew that by proceeding with the litigation, it ran the risk that Illinois law, which has no statutory cap on wrongful death damages, would apply. The Estate accepted that settlement because it knew that by proceeding with the litigation, it ran the risk that Indiana law, which has a $300,000 cap on wrongful death damages, would apply. To pretend that this settlement occurred with everyone knowing with certainty that Indiana law would apply is to ignore the facts, which we cannot countenance and which the choice of law decision does not require. Thus, we find that the trial court erred by preventing Storey from introducing evidence of the wrongful death statutory scheme in Illinois.

■ That said, the trial court also excluded Storey's expert witnesses. A trial court is accorded broad discretion in ruling on discovery issues, and we will interfere only when the appealing party can show an abuse of that discretion. *Buntin v. Becker*, 727 N.E.2d 734, 736 (Ind.Ct.App.2000). Here, on October 22, 2003, Leonas submitted a request for production seeking all documentation related to expert witnesses. Eventually, Storey responded that "an expert had not been retained at this time. Investigation and discovery continue, and this answer will be supplemented with the Indiana Trial Rules as required." Appellees' App. p. 66–69.

Storey did not supplement the response thereafter. At the December 1, 2004, deposition of Storey's attorney, the attorney attested that they had not yet retained an expert, further attesting that, "[o]nce we decide who we are going to use as a trial expert, I'll provide you with their … opinions, the conclusions and the bases therefor, and the opportunity to take his or her deposition." *Id.* at 72–73. Storey never amended, supplemented, or corrected these deposition answers.[3] Instead, Storey essentially ambushed Leonas with a witness list just as discovery was closing. In Leonas's motion to bar the expert testimony, it was explained that Storey had not provided the experts' CVs, reports, or summaries of their opinions. Under these circumstances, we do not find that the trial court abused its discretion in barring Storey's experts from testifying.

■■■■ "[E]xpert testimony is usually required in a legal malpractice action to establish the standard of care by which the defendant attorney's conduct is measured." *Oxley v. Lenn,* 819 N.E.2d 851, 857 (Ind. Ct.App.2004). The only exception to the rule is when the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it. *Hacker v. Holland,* 570 N.E.2d 951, 953 n. 2 (Ind. Ct.App.1991). Here, Storey's experts were prepared to testify about Leonas's conduct in settling a wrongful death action that had been filed in Illinois, requiring knowledge of the Illinois Wrongful Death Act and the statutory requirements to be followed. These issues are certainly not within the common knowledge of the community as a whole. Consequently, it was incumbent upon Storey to offer expert testimony to establish any alleged breaches of duty on the part of Leonas. Inasmuch as Storey's experts were barred from testifying, he could not meet his burden on the legal malpractice claim.[4] Consequently, we find that the legal malpractice claim was properly dismissed for this reason.

## II. Conversion

■■■■ Next, Storey argues that the trial court improperly dismissed his conversion claim.[5] Leonas initially filed a motion for judgment on this claim but the trial court converted the motion into a summary judgment motion and permitted full briefing on the issue. Summary judgment is appropriate only if the pleadings and evidence considered by the trial court

---

3. Storey attempts to blame this failure on the fact that Leonas did not propound interrogatories requesting the identity of Storey's experts and information about their testimony. We find this to be another attempt to blame a mistake on someone else. Storey had a responsibility to provide this information; he failed to do so in a timely fashion. That is his own fault, not Leonas's.

4. Storey argues that he had a "fact witness with expertise," reply br. p. 11, whose testimony sufficed to establish a breach. We disagree, inasmuch as the law is clear that *expert* testimony is required. The trial court explicitly barred this witness from proffering expert testimony; thus, Storey failed to meet this burden.

5. Storey argues that the trial court "used inconsistent standards" in applying the dispositive motions deadline. Appellant's Br. p. 25. Specifically, the trial court had denied his motion for leave to seek partial summary judgment because the motion was filed beyond the dispositive motion deadline but went on to consider Leonas's motion for judgment on the conversion claim beyond that date. The trial court has broad discretion in managing its docket and enforcing deadlines. *Neeley v. State,* 156 Ind.App. 449, 452, 297 N.E.2d 475, 477 (Ind.Ct.App.1973). We decline to second-guess the trial court for allowing one motion to be filed but not another and do not find an abuse of discretion on this basis.

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001); see also Ind. Trial Rule 56(C). The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

Indiana Code section 35–43–4–3(a) provides that a person who "knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion[.]" If a party is able to prove conversion, he may bring a civil action against the person who caused the loss for, among other things, treble damages, costs, and attorney fees. Ind.Code § 34–24–3–1.

 Here, Leonas was acting at the behest of his clients, Blair. She initially directed him to disburse $144,000 to Storey, but when Storey attached metaphorical strings to the acceptance of the funds, Blair changed her mind and directed Leonas to deny any further disbursement. Thus, to the extent that anyone was controlling the money, it was Blair, not Leonas. Furthermore, it is well established that the conversion statute "does not apply to the failure to pay a debt." *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind.Ct.App. 2005). Here, the settlement came as a result of Leonas's representation of Blair and the Estate. If Storey was owed money from the settlement, *at most*, Blair's refusal to disburse the money to him was wrongful withholding of funds and a failure to pay a debt, which does not constitute conversion as a matter of law. Thus, under these circumstances, we find that judgment was properly entered in Leonas's favor on the conversion claim.[6]

The judgment of the trial court is affirmed.

NAJAM, J., and KIRSCH, J., concur.

---

6. To the extent that Storey makes a new argument on appeal that the conversion claim should have survived as a breach of fiduciary duty claim, this argument is waived and we will not consider it. *Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind.2006) (holding that "[i]ssues not raised at the trial court are waived on appeal").