

I N T H E

# Court of Appeals of Indiana

Richard Shaling,

*Appellant-Plaintiff*

v.

Biomet, Inc., et al.,

*Appellees-Defendants*



FILED

Mar 11 2025, 8:47 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

---

March 11, 2025

Court of Appeals Case No.
24A-CT-516

Appeal from the St. Joseph Circuit Court

The Honorable John E. Broden, Judge

Trial Court Cause No.
71C01-1906-CT-216

---

**Opinion by Chief Judge Altice**
Judges Vaidik and Scheele concur.

**Altice, Chief Judge.**

## Case Summary

[1] Richard Shaling appeals the grant of summary judgment in favor of Biomet, Inc., Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, and Biomet Manufacturing LLC (collectively, Biomet), arguing that the trial court should have applied Alabama law to his products liability claims against Biomet, and that the trial court erred in determining that his action is time-barred under the Indiana Products Liability Act's (IPLA) statute of repose, Ind. Code § 34-20-3-1. Specifically, Shaling contends that Alabama law should govern his action because he provided Biomet with sufficient notice of his intent to assert the applicability of its laws. Shaling further maintains that Indiana's statute of repose did not bar his claims because that statute does not apply in products liability actions where, as here, an injury was caused by a disease that might have been contracted from prolonged exposure to an inherently dangerous foreign substance. Shaling further claims that his action was timely because he sued Biomet within two years after his cause of action had accrued.

[2] We affirm.

## Facts and Procedural History

[3] On February 20, 2001, Shaling—while living in Alabama—underwent total hip replacement surgery[1] in Birmingham, Alabama, wherein Dr. Timothy Cool

---

[1] The designated evidence reveals a discrepancy regarding the date of the surgery. Shaling's complaint alleges that the surgery was performed on February 20, 2001, whereas the designated evidence asserts that it

implanted a metal-on-metal system (M2 System) in Shaling's left hip. Biomet, whose principal place of business is in Warsaw, Indiana, manufactured, engineered, and designed the M2 System. Shaling's surgery replaced metal hardware that had been implanted in his hip following a serious motorcycle accident in 1984.

[4]     In August 2014, Shaling was diagnosed with leukemia, and in early 2015, testing revealed elevated metal ion levels in his blood. Shaling began conducting his own online research to determine whether metal-on-metal hips caused the ions and could have caused his leukemia.

[5]     On January 29, 2015, Shaling visited his primary care physician, Dr. Jeremy Smith, shared several articles with him about metal ion levels, and discussed whether the M2 System might have produced his illness. Following their conversation, Dr. Smith ordered various tests for Shaling, and it was discovered that Shaling's ion levels remained elevated. At the time, Shaling was not experiencing pain or suffering mobility problems. Dr. Smith determined that the elevated levels had not reached a dangerous point, and he did not recommend any further action.

[6]     In March 2015, Shaling consulted with Dr. Cool about the elevated ions and whether he might require surgery to replace the M2 System. Dr. Cool did not

was performed on December 20, 2001. As the discrepancy does not affect the issues on appeal, we reference February 20, 2001 as the date of the surgery.

see an immediate need for additional surgery, and he could not predict whether the elevated levels might cause future problems. Dr. Cool, however, ordered Shaling to undergo MRI and CT scans. Shaling's medical records indicated that the CT scan findings, dated June 16, 2015, were "worrisome for particle disease." *Appellant's Appendix Vol.* 3 at 104.

[7] After a follow-up appointment with Dr. Smith on July 28, 2015, medical records indicated that Shaling had consulted with Dr. Cool about replacing or resurfacing his left hip. Shaling, however, asserted that there was "no talk" about additional surgeries, and that Dr. Cool assured him it was not time to replace the hip, regardless of the elevated levels. *Id.* at 200.

[8] From early February 2016 through February 2017, additional blood tests showed that Shaling's ion levels had fluctuated from a minor elevation to a "cobalt toxicity" level. *Id.* at 208. Dr. Cool was concerned that the M2 System had likely caused the metal ion release. At a follow up appointment with Dr. Cool on July 14, 2017, Shaling was experiencing hip pain. At some point thereafter, Dr. Cool told Shaling—without further explanation—that they "needed to get that hip out." *Id.* at 215, 217. Dr. Cool ruled out infection and loosening of the prosthetic as causes of Shaling's elevated ion levels.

[9] Shaling underwent revision surgery on August 15, 2017, in Alabama, where it was determined that the M2 System had failed. Dr. Cool used a different cobalt chromium head in the surgery and left some of the metal components in Shaling's body. Following the surgery, Shaling's ion levels drastically

decreased. Dr. Cool concluded that the M2 System had "poisoned Shaling from the inside," because the implant was "shedding cobalt." *Appellant's Appendix Vol.* 3 at 347, 356.

[10] Following the revision surgery, Shaling's levels eventually returned to normal. Shaling, however, began to experience intense pain, paralysis and numbness in his left leg, and he needed a crutch to walk. Shaling underwent an additional surgery because his sciatic nerve was encased in scar tissue from the prior hip surgeries. Shaling ultimately suffered a serious infection and is now permanently disabled.

[11] On June 10, 2019, Shaling filed a products liability complaint against Biomet, seeking compensatory and punitive damages. Shaling alleged that Biomet had "fast tracked" the M2 System—before the Federal Drug Administration had approved it—by claiming that the device was substantially equivalent to other products that had already been cleared for sale. *Appellant's Appendix Vol.* 2 at 32-33. Shaling further asserted that Biomet misled him and the public regarding the safety of its products, that the M2 System was defectively designed and unreasonably dangerous, and that Biomet failed to provide reasonably complete and accurate information to Shaling and the orthopedic community about the M2 System.

[12] On May 7, 2023, the trial court entered an order setting the matter for a two-week jury trial to begin on June 3, 2024. Thereafter, on October 31, 2023, Biomet filed a motion for summary judgment, arguing that Shaling's claims

were time-barred under the IPLA's two-year statute of limitations and the statute of repose. Biomet maintained that because Shaling was implanted with the M2 System more than 18 years before filing his complaint, the statute of repose barred his action. Biomet also asserted that Shaling's case was independently barred by the two-year statute of limitations because Shaling knew—no later than June 2015—of his elevated metal ion levels in his blood, that the M2 System was the cause of the elevated levels, and that he would require revision surgery to remove the M2 System. Thus, Biomet argued that Shaling was required to file his complaint prior to June 2017.

[13]  In opposing Biomet's motion for summary judgment, Shaling argued that there were genuine issues of material fact as to when he suffered his injury. Shaling maintained that he did not sustain injury until July 2017, and the injury was documented on August 11, 2017. Shaling also argued—for the first time—that Alabama law should govern the action because the two surgeries were performed there. Shaling maintained that while Alabama's two-year statute of limitations is similar to Indiana's, there is no statute of repose in Alabama that would bar his claims.

[14]  Following a hearing on January 9, 2024, the trial court declined to apply Alabama law to Shaling's action, concluding that Shaling had not provided sufficient notice under Ind. Code § 34-38-4-4, the Uniform Judicial Notice of Foreign Law Act (UJNFLA), of his request for application of Alabama law. The trial court observed that "to raise [the] substantive choice of law in the summary judgment response . . . mere months before the scheduled two-week

trial. . . is not reasonable and is prejudicial to [Biomet]." *Appellant's App. Vol.* 2 at 25-26. The trial court then determined that Shaling's claims were not time-barred under the two-year statute of limitations because questions of fact remained "as to when exactly [Shaling] should have discovered that there was an actionable harm to him that would trigger the commencement of the statute of limitations . . . ." *Id.* at 25. It concluded, however, that Indiana's statute of repose barred Shaling's action because he "designated no evidence to dispute Biomet's designated evidence that the [M2 System] was delivered to the market when [it] was implanted [in his hip] on February 20, 2001." *Id.* at 26.

[15] Shaling now appeals.

## Discussion and Decision

## Standard of Review

[16] As Shaling is appealing the trial court's grant of summary judgment in Biomet's favor, our standard of review is well settled:

> When this Court reviews a grant or denial of a motion for summary judgment, we "stand in the shoes of the trial court." Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We will draw all reasonable inferences in favor of the non-moving party. We review summary judgment de novo.

*Arrendale v. Am. Imaging & MRI, LLC,* 183 N.E.3d 1064, 1067-68 (Ind. 2022) (citations omitted).

# I. Shaling's Request to Apply Alabama Law

[17] Shaling argues that the trial court abused its discretion in determining that he failed to provide reasonable notice of his intent to rely on Alabama law. Shaling asserts that because the parties had not yet prepared for trial, and the trial was not scheduled to commence for several months, his notice to Biomet was timely and Biomet was not prejudiced by the request.

[18] Under the UJNFLA,

> [a]ny party may present to the trial court any admissible evidence of such [foreign] laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken of the evidence, *reasonable notice shall be given to the adverse parties, either in the pleadings or otherwise*.

I.C. § 34-38-4-4 (*emphasis added*).

[19] A trial court's ruling on a party's request to apply the law of another jurisdiction pursuant to the UJNFLA is reviewed for an abuse of discretion. *Storey v. Leonas,* 904 N.E.2d 229, 236 (Ind. Ct. App. 2009), *trans. denied*. Thus, we presume that the trial court acted "in accord with what is fair and equitable," and we only reverse if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *DePuy Orthopaedics, Inc., v. Brown,* 29 N.E.3d 729, 731-32 (Ind. 2015). We will not reweigh the evidence; rather, we will determine whether the evidence before the trial court can serve as a rational basis for its decision. *Id.* at 732. In doing so, we consider the evidence in a light most

favorable to the judgment. *Reel v. Reel,* 231 N.E.3d 915, 926 (Ind. Ct. App. 2024).

[20] In construing the UJNFLA, our Supreme Court has observed that the "purpose of the notice requirement is to allow the other party time to prepare by studying the applicable law." *Sword v. NKC Hosps., Inc.,* 714 N.E.2d 142, 147 (Ind. 1999). In the absence of "reasonable notice" as required under the UJNFLA, the trial court will presume that the law in the other jurisdiction is substantially the same as that in Indiana. *Id.* at 146. Failure to satisfy the requirements of the UJNFLA will result in the application of Indiana law. *Holland v. Miami Sys., Inc.*, 624 N.E.2d 478, 482 (Ind. Ct. App. 1993), *trans. denied.*

[21] Instructive here is *Sword,* where our Supreme Court construed the meaning of "reasonable notice" under the UJNFLA. The issue was whether the trial court abused its discretion in holding that the plaintiffs waived a choice-of-law issue by waiting until a summary judgment hearing to argue that Kentucky substantive law governed a medical malpractice action. 714 N.E.2d at 146. The plaintiffs argued that they provided reasonable notice under the UJNFLA because a sister action was pending in a Kentucky court, the details of the complaint made it "clear" that Kentucky law should apply, and they raised the issue at the summary judgment hearing. *Id.* Our Supreme Court rejected those arguments and held that the plaintiffs failed to give reasonable notice under the UJNFLA.

In arriving at that result, the Court observed that "the fact that an [injury] occurred in a state other than Indiana does not provide reasonable notice that a party will seek to use the other state's law." *Id.* at 146. The Court rejected the plaintiff's contention that the complaint provided the required notice because "the complaint . . . stated only that [the defendant was] a Kentucky hospital and that the incident occurred in Kentucky, facts which, in and of themselves, do not provide reasonable notice." *Id.* at 147. The Court further observed that raising the issue at the summary judgment hearing was not reasonable notice because the plaintiffs asserted a potentially "strategy-altering issue without allowing [the defense] any opportunity to prepare." *Id.* Thus, the Court concluded that the trial court did not abuse its discretion in determining that the plaintiffs waived the choice-of-law issue, and that Indiana law governed the action.

Like *Sword*, Shaling "raised a potentially strategy-altering issue" at the summary judgment stage of the proceedings. *See id.* at 147. Shaling filed his complaint in 2019, and the two-week jury trial was to commence on June 3, 2024. Shaling did not request the application of Alabama law until he filed his opposition to Biomet's motion for summary judgment on December 6, 2023—four years after the complaint was filed and less than six months before the jury trial was to begin. Moreover, the parties conducted discovery, motions were filed, and trial strategy was developed—all in accordance with Indiana law. And when Biomet filed its motion for summary judgment in October 2023, discovery had closed and Shaling had provided Biomet with its list of expert

witnesses.  In light of these circumstances, we cannot say that the trial court abused its discretion in concluding that Shaling failed to give reasonable notice of his request for application of Alabama law.

## II.  Indiana's Statute of Repose

Shaling argues that the trial court erred in determining that the IPLA's statute of repose barred his action.  Shaling likens his injury from the M2 System to asbestos-related diseases and contends that his action can proceed because the statute of repose does not apply to injuries that are the result of a "protracted exposure to an inherently dangerous foreign substance."  *Appellant's Brief* at 52.

Personal injury claims stemming from alleged defects in a defendant's product fall under the scope of the IPLA.  *Stegemoller v. ACandS, Inc.,* 767 N.E.2d 974, 975-76 (Ind. 2002).  As relevant here, the IPLA's statute of limitations and repose are set out in I.C. § 34-20-3-1 as follows:

> (a) This section applies . . . in any product liability action in which the theory of liability is negligence or strict liability in tort.
>
> (b) [A] a product liability action must be commenced:
>
>> (1) within two (2) years after the cause of action accrues; or
>>
>> (2) within ten (10) years after the delivery of the product to the initial user or consumer.

However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

[26] The statute of repose is an affirmative defense, *Jurich v. John Crane, Inc.,* 824 N.E.2d 777, 780 (Ind. Ct. App. 2005), *trans. denied,* and its purpose with regard to products liability claims is to place "an outer limit on the right to bring a civil action," measured "not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). It is the legislature's clear intention to limit the time within which product liability actions can be brought. *Estabrook v. Mazak Corp.,* 140 N.E.3d 830, 836 (Ind. 2020). Statutes of repose balance the victim's interests in recovering damages with a business's interest in being free from indefinite liability exposure. *See Scalf v. Berkel, Inc.,* 448 N.E.2d 1201, 1204-05 (Ind. Ct. App. 1983).

[27] As our Supreme Court observed in *Estabrook,*

> [t]he statute [of repose] requires a plaintiff to bring suit 'within (10) years after the delivery of the product to the initial user or consumer.' The only exception is for an action accruing at least eight years but fewer than ten years after the product's initial delivery. When that happens, a plaintiff can still sue within two years after accrual, even if more than ten years have elapsed since delivery.

140 N.E.3d at 831. The only other exception is a judicially-created one dealing with allegations of latent harm from exposure to asbestos. *See Myers v. Crouse-Hinds Div. Of Cooper Indus., Inc.,* 53 N.E.3d 1160 (Ind. 2016).

[28] In this case, the designated evidence established that the M2 System was "delivered" no later than February 20, 2001, i.e., the date the device was implanted in Shaling's hip. Shaling did not file his action until June 10, 2019—approximately 18 years later. While Shaling's action is barred under the statute of repose, he claims that summary judgment for Biomet was erroneous because the M2 System's metal ion release should be treated as an "inherently dangerous foreign substance" that is exempt from the statute of repose. *Appellant's Brief* at 55. Shaling asserts that his action should proceed because the M2 System—after it was placed in his hip—"continuously produced metal ions that slowly entered his bloodstream." *Id.* at 52. As a result, he claims such circumstances allow him to file suit within two years of discovering his alleged injury.

[29] Shaling does not direct us to any case—nor have we found one—that stands for the notion that there is a general latent disease exception to the statute of repose in products liability claims. Indeed, the United States District Court recently interpreted the IPLA's statute of repose in *Johnson v. Centrome, Inc.,* 688 F.Supp.3d 813, 826 (N.D. Ind. 2023). In that case, the plaintiff was exposed to various toxic industrial chemicals beginning in 1992 while working at a popcorn factory. The plaintiff last came into contact with the chemicals in 1995, began to experience "shortness of breath" in 1998, and was diagnosed

with chronic bronchitis and other respiratory diseases in 2009. *Id.* at 817, 819. The plaintiff left his employment sometime in 2009, and in April 2020—nearly twenty-five years after the last exposure to the chemicals—he brought a products liability action against the manufacturer and seller of the toxic chemicals.

[30] The *Johnson* Court granted the defendants' motion for summary judgment and determined that the IPLA's statute of repose barred the plaintiff's action. In arriving at that result, the Court observed that the argument for excepting cases from the statute of repose that involve latent diseases that arise from inherently dangerous products "springs from a line of asbestos-related cases, in which Indiana courts have departed from the plain language of the IPLA statute of repose." *Id.* The Court further noted—and correctly so—that such cases exempting plaintiffs from the statute of repose have *only* applied to "long-term, difficult-to-discover diseases caused by *asbestos exposure*." *Id.* at 828 (emphasis added); *see, e.g., Covalt v. Carey Canada, Inc.,* 543 N.E.2d 382, 387 (Ind. 1989) (limiting its holding "to the precise factual pattern presented," i.e., cases involving injuries caused by asbestos). And "the fact that other diseases may share some similarities with asbestosis and mesothelioma, cannot overcome a dearth of authority carving those conditions out of the IPLA statute of repose." *Johnson,* 688 F.Supp.3d at 826. Thus, doing so here would create an exemption that simply is not there. *See, e.g., Estabrook*, 140 N.E.3d at 832 (rejecting the plaintiff's argument that the statute of repose contains an exception for a product's repair, refurbishment, or reconstruction because it "was not an

asbestos lawsuit").  In short, other than asbestos-related claims, no prior decision from either this court or our Supreme Court has fashioned a general latent disease exception to the statute of repose.

[31]   Granted, our General Assembly *could* enact such an exemption to the statute of repose, but it has not done so.  And whether there *should* be a broad latent disease exception is arguable as a matter of policy, but either way, it is for the legislature to decide—not the courts.  *See id.* at 834 (observing that our courts "merely interpret the statute the legislature enacts").  In sum, there is no "exposure to an inherently dangerous foreign substance" exception embodied in the statute of repose as Shaling would have it.  *Appellant's Brief* at 9.[2]

[32]   Because Shaling did not file his complaint until June 10, 2019—nearly eighteen years after the M2 system was implanted in his hip—his action is time-barred. Accordingly, we conclude that the trial court properly granted summary judgment for Biomet.[3]

[33]   Judgment affirmed.

---

[2] Shaling also suggests that the IPLA's statute of repose is tolled because of Biomet's alleged fraudulent concealment.  We note, however, that he did not present this argument to the trial court.  Thus, the issue is waived.  *See GKC Ind. Theatres, Inc. v. Elk Retail Invs., LLC*, 764 N.E.2d 647, 652 (Ind. Ct. App. 2002) (holding that a party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court).  Moreover, even had Shaling preserved the issue, our Supreme Court has rejected the argument that fraudulent concealment tolls a statute of repose.  *Blackford v. Welborn Clinic*, 172 N.E.3d 1219, 1231 (Ind. 2021).

[3] Because the statute of repose bars Shaling's action against Biomet, we need not decide whether his claim is separately time-barred under IPLA's two-year statute of limitations.

Vaidik, J. and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Crystal G. Rowe
Jacob W. Zigenfus
New Albany, Indiana

ATTORNEYS FOR APPELLEES

Brian J. Paul
Indianapolis, Indiana

Eldin Hasic
Blake T. Lehr
Fort Wayne, Indiana